Of Counsel:
EKIMOTO & MORRIS
A Limited Liability Law Company LLLC

JOHN A. MORRIS          3732-0
RUSSELL H. ANDO         2667-0
1001 Bishop Street, Suite 780
Honolulu, Hawaii 96813
Telephone No. 523-0702

Attorneys for Secured Creditor
ASSOCIATION OF APARTMENT
OWNERS OF THE WINDSOR

FILED
BANKRUPTCY COURT
DISTRICT OF HAWAII

2010 JUN 16  PM 1:50

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>TERESA JEAN MOORE,<br><br>      Debtor. | ) CASE NO. 10-00771 (RJF)<br>) (Chapter 13)<br>)<br>)<br>) MEMORANDUM IN SUPPORT OF<br>) SECURED CREDITOR ASSOCATION OF<br>) APARTMENT OWNERS OF THE<br>) WINDSOR'S MOTION FOR RELIEF FROM<br>) THE AUTOMATIC STAY AS TO<br>) APARTMENT 4404 AT THE WINDSOR OR<br>) FOR DISMISSAL OF THIS CASE AS TO<br>) THAT PROPERTY; EXHIBIT "A"<br>) |

## MEMORANDUM IN SUPPORT OF MOTION

### I.    FACTS

COMES NOW Creditor ASSOCATION OF APARTMENT OWNERS OF THE

WINDSOR ("Movant"), by and through its attorneys, EKIMOTO & MORRIS, A Limited

Liability Law Company, LLLC, and hereby submits its Memorandum in Support of its Motion

for Relief from the Automatic Stay as to Apartment 4404 at the Windsor or for Dismissal of This

Case as to That Property or, alternatively, for adequate protection.

Movant is a Hawaii condominium association, organized as a nonprofit corporation under Chapter 414D, Hawaii Revised Statutes. Debtor TERESA JEAN MOORE ("Debtor"), is the Personal Representative of the Estate of Pacita Inductivo Herschelman, deceased ("Estate"). The Estate, not Debtor, is the owner of record of Apartment No. 4404 at The Windsor condominium project, located at 343 Hobron Lane, Honolulu, Hawaii (the "Real Property"), a Condominium Property Regime organized and existing pursuant to Chapter 514B of the Hawaii Revised Statutes, as amended.

On March 18, 2010, Debtor filed a petition for relief under Chapter 13 of Title 11, United States Code (the "Petition"). Debtor filed the Petition as an individual, but included property that is part of the Estate, including the Real Property which is the subject of this Motion. That fact is confirmed by section 14 of her Statement of Financial Affairs, as well as by her Petition.

Following the filing of the Petition, Debtor continued to hold an interest in the Real Property through the Estate, but only as Personal Representative of the Estate, and continued to be responsible for maintenance expenses incurred post-petition. See 11 U.S.C. §523(a)(16).

Notwithstanding the fact that the Real Property is part of the Estate, not Debtor's own property, Movant recognized that by operation of §362(a) of Title 11, creditor actions with respect to the Debtor and the Debtor's property, including collection of maintenance expenses, might be stayed by the filing of the Petition. Therefore, Movant ceased further action against the Real Property.

Movant now seeks to be relieved from said stay based on §362(d) of said Title 11 so that Movant may proceed to exercise its remedies, including foreclosure of its lien against the Real Property, to collect amounts due and owing and not dischargeable under the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii  #10-00771  Dkt # 31  Filed  06/16/10  Page 2 of 26

Movant also requests dismissal of the bankruptcy as to the Real Property on the basis that Debtor lacks standing to bring claims on her own behalf or on behalf of the Estate with respect to the Real Property. This matter has already been decided by the United States District Court for the District of Hawaii in an "Order: 1) Granting Defendants' Motion To Dismiss As To Standing and Dismissing Plaintiffs' Claims Without Prejudice; (2) Granting, Denying, and Dismissing Various Motions And Joinders" filed on May 25, 2010 in Civil No. 09-00461 DAE-KSC. In that order, Judge Ezra ruled that, "[T]he Court finds that for Plaintiffs' [i.e., Debtor and her father Eugene F. Herschelman] claims as to the Condominium [i.e., the Real Property at issue in this motion], Plaintiffs may not sue pro se in either their individual capacity or Moore's capacity as Personal Representative of the Estate, and therefore, Plaintiffs do not have standing to bring this action on behalf of the Estate." See Exhibit "A" attached hereto at page 10. For the reasons stated in Judge Ezra's order, this Court should reach the same conclusion.

## II.    JURISDICTION

This Honorable Court has jurisdiction to hear this matter pursuant to Bankruptcy Rules 4001(a) and 9013, and §362 of the Bankruptcy Code.

## III.    RELEVANT LAW

Bankruptcy Code §362(d) states:

(d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
(1)  for cause, including the lack of adequate protection of an interest in property of such party in interest;
*          *          *

The cases and analysis in Judge Ezra's May 25, 2010 order, referred to above, confirm that Debtor lacks standing to file bankruptcy with respect to the Real Property, so this Court should reach the same conclusion in this case. See Exhibit "A" attached hereto.

3

# IV.    ARGUMENT

## A.    BECAUSE NO PROTECTION OF THE MOVANT'S INTERESTS IN THE PROPERTY EXISTS, THIS HONORABLE COURT SHOULD LIFT THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362(d)(1)

Movant has an interest in the Real Property by virtue of unpaid maintenance assessments, pursuant to §514B-146 of the Hawaii Revised Statutes, as amended.  That this interest is held by Movant cannot reasonably be disputed.

Bankruptcy Code §362(d)(1) states that the court shall grant relief from the stay provided for under §362(a) for cause.  Movant submits that the Chapter 13 Plan ("Plan") submitted by Debtor is inadequate to even pay Movant in full on the delinquency, let alone the Trustee or the lender.

For example, Debtor proposes to make a total monthly payment of $425.00 under her Plan for all creditors.  Movant is submitting a Proof of Claim indicating that Debtor owes Movant over $34,000.00.  Assuming Debtor were to attempt to repay that amount over sixty (60) months, the total monthly payment to Movant alone would be $566.00.  Even assuming as much as $10,000.00 of Movant's claim was disallowed and Debtor were required to pay only $24,000.00 over sixty (60) months -- which Debtor, herself, admits in her Plan is the total claim of Movant -- Debtor would have to pay Movant $400.00 per month to pay off the pre-petition debt to Movant within sixty (60) months.  In other words, Debtor would have to pay $400.00 of the $425.00 proposed monthly payment just to satisfy Movant's prepetition debt and fulfill the requirements of her Plan.

Similarly, Debtor's Plan calls for payments totaling $500,500.00 over the course of the Plan.  Nevertheless, section 1 of the Plan makes it clear that only $25,500.00 of that amount will actually be paid by Debtor.  The remaining $475,000.00 is supposedly to come from claims

4

Debtor has against the parties listed in section 8 of her Plan. In other words, the $475,000 to be paid under Debtor's Plan is contingent on this Court (or any other court) ruling in Debtor's favor in all of the adversarial proceedings she intends to bring in this bankruptcy case, per the Section 8. Supplemental Attachment filed with the Plan.

Moreover, Schedule D of the Debtor's Plan confirms her belief that $14,000.00 of Movant's claim is unsecured. In addition, section 4.01-4 of the Plan proposes to pay Movant only $10,000.00 of its claim of more than $34,000.00. This decision is again based on the Debtor's belief that she will prevail on her claims against Movant for various imagined violations of the Federal Fair Debt Collection Practices Act ("FDCPA") and Hawaii law.

As Debtor herself admits in section 8 of her plan, Judge Ezra has ruled against Debtor on the FDCPA claims against Movant, and Debtor has provided no legal basis for her belief that she will prevail on the appeal of Judge Ezra's decision on her alleged Hawaii law claims. Nevertheless, Debtor's Plan blithely proposes to simply ignore $24,000.00 of Movant's claim. If she does not bring adversarial proceedings or the Court does not rule in her favor in those proceedings, the total payments reflected in the Plan actually being paid by Debtor will only be $25,500.00. In other words, Movant or any of the other creditors to be paid out of Debtor's Plan might wait several years only to discover that Debtor is unsuccessful in her claims and is unable to pay any of her creditors. Nevertheless, Debtor's Plan includes no contingency or explanation of how she will pay the balance of $475,000.00 if she is not successful on her claims, and, again, she owes Movant alone over $34,000.00, more than $8,000.00 above what she actually proposes to pay out of her pocket.

Finally, Debtor's sources of income listed and her plans seem to be very uncertain and to be clearly outside the definition of "regular income" found in section 109(e) of the code. In

5

other words, even Debtor's ability to pay the $25,500.00 that will supposedly come out of her pocket is highly questionable. For example, section 2 of Debtor's Plan lists business income of $800.00 but no indication of the source of that income, whether it is received every month on a regular basis or whether it is contingent on referrals or other unstable sources.

Similarly, section 4 of Debtor's Plan indicates rental income from properties of $1,800.00 with no indication of the source of the income, whether there are other claims on the income, etc. For example, if Debtor is proposing to rent out the Real Property that is the subject of this Motion, then the Real Property would be subject to claims of maintenance fees and other potential charges. Section 4 of Debtor's Plan also includes no recognition of the possibility that tenants come and go from rental property and that there may be months when no rental income is received at all.

In summary, in evaluating the sources of income of the Chapter 13 debtor to make payments under a plan, the critical factor should be the degree of regularity and stability of the income. Once again, Debtor's Plan provides no such information on that issue and is therefore highly questionable under section 109(e) of the code.

Since no adequate protection of Movant's interests exists under the present circumstances and Debtor's proposed payments are based on completely speculative claims, Movant should be granted relief from the automatic stay to permit it to proceed with collection remedies including foreclosure. Debtor's proposed plan only indicates that Debtor has presented no valid basis for repayment of the debt owed to the Real Property, so the stay should be lifted as to that real property to allow Movant to pursue its remedies.

6

**B. DEBTOR LACKS STANDING TO FILE THIS CASE AS TO THE REAL PROPERTY AT ISSUE IN THIS MOTION SO THE CASE SHOULD BE DISMISSED AS TO THAT PROPERTY.**

The attached copy of the decision by Judge Ezra on May 25, 2010 (Exhibit "A") presents a well reasoned and thorough analysis of why Debtor lacks standing to pursue claims with respect to the Real Property that is the subject of this Motion. The same analysis should apply in the present case, because the issues are essentially identical. Therefore, Movant respectfully requests that this Court dismiss the bankruptcy as to the Real Property, to allow Movant to pursue its remedies.

For all of the foregoing reasons, Movant respectfully requests that this Honorable Court (1) grant Movant relief from the automatic stay or, in the alternative, issue an order providing for adequate protection of its interest in the Real Property; or (2) dismiss this case as to the Real Property .

DATED:  Honolulu, Hawaii, _____ June 15, 2010 _____.

JOHN A. MORRIS
RUSSELL H. ANDO
Attorneys for Secured Creditor
ASSOCATION OF APARTMENT OWNERS OF THE WINDSOR

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| TERESA J. MOORE; and EUGENE F. HERSCHELMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL CITY MORTGAGE COMPANY, dba COMMONWEALTH UNITED MORTGAGE COMPANY; NATIONAL CITY REAL ESTATE SERVICES, LLC; PNC FINANCIAL SERVICES GROUP, INC.; WELLS FARGO BANK, N.A.; BANK OF HAWAII; CAL-WESTERN RECONVEYANCE CORPORATION; PITE DUNCAN, LLP; NEW CENTURY MORTGAGE CORPORATION; CARRINGTON MORTGAGE SERVICES, LLC; DEUTSCHE BANK NATIONAL TRUST COMPANY; RUSH MOORE, LLP; AOAO THE WINDSOR; EKIMOTO & MORRIS, LLC; and DOES 1-100,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV. NO. 09-00461 DAE-KSC |

Exhibit A

ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS AS TO
STANDING AND DISMISSING PLAINTIFFS' CLAIMS WITHOUT
PREJUDICE; (2) GRANTING, DENYING, AND DISMISSING
<u>VARIOUS MOTIONS AND JOINDERS</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants PNC Bank, PNC

Financial, Cal-Western, and Pite Duncan's (the "PNC Bank defendants") motion

and the supporting and opposing memoranda, the Court **GRANTS** the PNC

Defendants' Motion to Dismiss as to lack of standing and dismisses Plaintiffs'

claims without prejudice.  (Doc. # 109.)  The Court **GRANTS** all other joinders as

the Court's instant Order below bears directly on all defendants.  (Docs. ## 121,

129, 131. & 135.)  The Court also addresses various other motions by the instant

Order as discussed below.  (Docs. ## 107, 111, 112, 130, 136, 140 160, 165, 166,

218, 249. 256, & 279.)

<u>BACKGROUND</u>

This matter arose out of nonjudicial foreclosure proceedings at two

residences.  The first foreclosure proceeding involves a unit in The Windsor

apartment complex located at 343 Hobron Lane, Honolulu, Hawai`i ("the

Condominium").  (Doc. # 1.)  On October 1, 2009, Plaintiffs filed a Complaint

seeking, <u>inter alia</u>, to enjoin foreclosure of the Condominum.  (<u>Id.</u>)  The Complaint

2

was brought against various bank, mortgage, and real estate companies for alleged violations of federal and state laws.

On December 28, 2009, Plaintiffs filed an Amended Complaint ("FAC"). ("FAC," Doc. # 36.) Plaintiff Teresa J. Moore ("Moore" or "Plaintiff Moore") is allegedly the personal representative of Pacita Herschelman (the "Decedent"), now deceased,[1] who was the mortgagor of the Condominium.[2] (FAC ¶ 3.) Plaintiff Eugene Herschelman ("Herschelman" or "Plaintiff Herschelman") is the Decedent's husband and is Moore's father. The FAC brings fourteen counts against various named bank, mortgage, and real estate companies and certain unnamed individuals. In addition to claims involving the Apartment, the FAC adds claims arising out of nonjudicial foreclosure proceedings involving a house apparently owned by Plaintiff Herschelman and possibly also by the Decedent, located at 2016 Komo Mai Drive, Pearl City, Hawaii ("the House"). (See FAC ¶¶ 51-74.)

On January 25, 2010, PNC Bank defendants filed the instant Motion to Dismiss ("Motion") for failure to state a claim upon which relief can be granted

---

[1] According to briefing before the Court, Pacita Herschelman passed away on or about January 21, 2009. (Doc. # 83 at 2.)

[2] The Court refers to the Decedent's estate, including the Condominium, as the "Estate."

3

(Doc. # 109) and an accompanying memorandum in support ("Mot.," Doc. # 110). PNC Bank defendants also filed three requests for judicial notice in support of their Motion. (See Docs. ## 111, 112, & 218.) On January 27, 2010, Defendants Cal-Western Reconveyance Corporation and Pite Duncan, LLP filed a motion for joinder to the Motion. (Doc. # 121.) On February 1, 2010, Defendant Wells Fargo Bank, N.A. filed a motion for joinder to the Motion. (Doc. # 129.) Also on February 1, 2010, Defendant Ekimoto & Morris, LLC filed a motion for joinder to the Motion. (Doc. # 131.) On February 11, 2010, Defendant Bank of Hawai`i filed a motion for joinder to the Motion. (Doc. # 135.) All joining defendants join the motion in its entirety and seek to dismiss the FAC. Defendant AOAO the Windsors Joinder (Doc. # 166) filed on March 4, 2010, is moot as this Court's previous order dismissed AOAO the Windsors from the instant case (Doc. # 224). The Court GRANTS all other joinders as the Court's instant Order below bears directly on all defendants. (Docs. ## 121, 129, 131, & 135.)

On March 1, 2010, Defendant Rush Moore, LLP filed a statement of no position as to the Motion. (Doc. # 162.) On March 2, 2010, Carrington Mortgage Services, LLC., Deutsche Bank National Trust Company filed a statement of no position as to the Motion. (Doc. # 164.)

4

On March 9, 2010, Plaintiffs filed an Opposition.  (Doc. # 169.)  On March 15, 2010, PNC Bank defendants filed a motion to strike Plaintiffs' Opposition.  (Doc. # 184.)  On March 22, 2010, the Court struck Plaintiffs' Supplemental Opposition filed the same day.  (Docs. ## 198, 224.)  On April 9, 2010, the Court granted Plaintiffs leave to file an amended opposition no later than April 14, 2010 at 4:00 p.m.  (Doc. # 224.)   On April 14, 2010, Plaintiffs filed a "Motion for Extension of the Motion Filing Time".  (Doc. # 228.)  Plaintiffs' motion for extension was included in Plaintiffs' Motion for Reconsideration and related only to the Motion for Reconsideration.  (See id.)  On April 23, 2010, the Court ordered Plaintiffs to file their oppositions to other pending motions by May 3, 2010.  (Doc. # 241.)  On May 3, 2010, Plaintiffs filed their amended opposition to the instant Motion (Doc. # 259) despite the Court's indication that all briefing deadlines had passed (see Doc. # 244).   On May 7, 2010, PNC Bank defendants filed a reply ("Reply," Doc. # 282) and Second Supplemental Request for Judicial Notice in support of their Motion (Doc. # 284.)  Also on May 7, 2010, PNC Bank defendants filed a motion to strike Plaintiffs' amended opposition for lack of timeliness and conformance with the local rules, and a motion for sanctions against Plaintiffs due to their failure to comply with this Court's orders regarding such timeliness and conformance with the local rules.  (Doc. # 279.)

The Court acknowledges that Plaintiffs' filing was untimely.  In determination of the instant Motion, the Court need not consider Plaintiffs' briefing and, accordingly, PNC Bank defendants' motion to strike is MOOT (Doc. # 279).  As to PNC Bank defendants' motion for sanctions, due to the fact that Plaintiffs are pro se and were tasked with filing multiple oppositions, the majority being due on May 3, 2010, and Plaintiffs did not receive electronic notice until April 20, 2010, the Court DENIES PNC Bank defendants' motion (Doc. # 279).

STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  See Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009); Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

When a defendant attaches exhibits to a motion to dismiss, the court ordinarily must convert the motion into a summary judgment motion so that the plaintiff has an opportunity to respond.  Parrino v. FHP, Inc., 146 F.3d 699, 706

6

n.4 (9th Cir. 1998).  However, a court "may consider evidence on which the

complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the

document is central to the plaintiff's claim; and (3) no party questions the

authenticity of the copy attached to the 12(b)(6) motion."  Marder v. Lopez, 450

F.3d 445, 448 (9th Cir. 2006).  The court may treat such a document as "part of the

complaint, and thus may assume that its contents are true for purposes of a motion

to dismiss under Rule 12(b)(6)."  United States v. Ritchie, 342 F.3d 903, 908 (9th

Cir. 2003).

       Further, under Federal Rule of Evidence 201, a court may take judicial

notice of "matters of public record."  Lee v. City of Los Angeles, 250 F.3d 668,

688-689 (9th Cir. 2001).  "Therefore, on a motion to dismiss a court may properly

look beyond the complaint to matters of public record and doing so does not

convert a Rule 12(b)(6) motion to one for summary judgment."  Mack v. South

Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other

grounds by Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 111

(1991).  However, consideration of a matter of public record does not mean that a

court  relies on the legal conclusions or factual statements found in it as valid.

"The existence and authenticity of a document which is a matter of public record is

judicially noticeable . . . but the veracity and validity of their contents (the

7

underlying arguments made by the parties, disputed facts, and conclusions of fact) are not." Cactus Corner, LLC v. United States Dep't of Agriculture, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004); see also Wyatt v. Terhune, 315 F.3d 1106, 1114 (9th Cir. 2003) ("taking judicial notice of findings of fact from another case exceeds the limits of Rule 201"); M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) (stating general rule that "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").

## DISCUSSION

On May 3, 2010, Plaintiffs filed multiple motions to strike PNC Bank defendants' requests for judicial notice.  (See Docs. ## 249, 256.)  Plaintiffs move pursuant to Rule 12(f) to strike PNC Bank defendants' requests for judicial notice (Docs. ## 111, 112, 218) allegedly due to lack of proper foundation under FRE 201(b) and prejudice Plaintiffs under the Hawai`i Constitution and the United States Constitution.  (See Docs. ## 249, 256.)  The Court grants PNC Bank defendants' requests only as to the Mortgage and the Note (Doc. # 112, Ex. A (Adjustable Rate Note executed by Decedent Pacita Inductivo Herschelman) & B (Mortgage on the Apartment).)   These documents are admissible as integral to

8

Plaintiffs' Complaint and relevant to determination of the instant motion.  See Marder, 450 F.3d at 448; Ritchie, 342 F.3d at 908; (FAC ¶¶ 2, 5-7.)

All other documents are redundant or outside the purview of the instant motion.  Accordingly, the Court GRANTS IN PART AND DENIES IN PART PNC Bank defendants' Request for Judicial Notice (Doc. # 112) and DENIES PNC Bank defendants' additional requests for judicial notice (Docs. ## 111 & 218) and DENIES Plaintiffs' motions to strike such requests (Docs. ## 249 & 256).

I.      Motion to Dismiss

PNC Bank defendants allege that they have never had any interest or involvement with the House, and therefore Plaintiffs' causes of action against them relate only to the Condominium.  (Mot. at 1.)  Accordingly, PNC Bank defendants' Motion to dismiss relates only to the Condominium and the Court's Order is also so confined.   Preliminarily, PNC Bank defendants raise the issue of Plaintiffs' standing to sue on behalf of the Estate.  Because the Court resolves the instant motion on standing grounds, the Court does not reach PNC Bank defendants' other grounds upon which to dismiss.

The FAC caption, acknowledgment and verification identifies both Plaintiffs as suing solely in their individual capacities as potential heirs of the

9

Estate.  (See FAC.)  Plaintiff Moore also states in the body of the FAC that she is

the personal representative of Decedent's Estate.  (FAC ¶ 3).  Moore was

apparently appointed Personal Representative of the Deceased by the Hawaii First

Circuit Court.  (Id.)  As discussed below, the Court finds that for Plaintiffs' claims

as to the Condominium, Plaintiffs may not sue pro se in either their individual

capacity or Moore's capacity as a Personal Representative of the Estate, and

therefore. Plaintiffs do not have standing to bring this action on behalf of the

Estate.

> Whether a plaintiff has standing to bring a suit in federal court is a

threshold issue for this Court.  First and foremost, a party must meet the standing

requirements of Article III of the U.S. Constitution.  If Plaintiffs cannot establish

Article III standing, then this Court has no jurisdiction to hear their claim and the

action must be dismissed.  Article III, section 2 provides that a federal court's

judicial power extends to all cases arising under the Constitution or laws of the

United States, to all cases of admiralty and maritime jurisdiction, and to

controversies to which the United States is a party or to controversies between two

or more states or citizens of different states.  U.S. Const. art. III, § 2.

> The determination of whether a plaintiff can establish standing

involves two related components:  the constitutional "case or controversy"

requirements of Article III, and the court-formulated "prudential" considerations.

See Warth v. Seldin, 422 U.S. 490, 498 (1975).

First, a plaintiff must meet the case or controversy requirement by

showing that:

> (1) it has suffered 'an injury in fact' that is (a) concrete
> and particularized and (b) actual or imminent, not
> conjectural or hypothetical; (2) the injury is fairly
> traceable to the challenged action of the defendant; and
> (3) it is likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-

181 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992));

see also Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837 (9th Cir.

2007).  If a plaintiff fails to demonstrate a case or controversy, then a federal court

lacks subject matter jurisdiction over the suit.  Steel Co. v. Citizens for a Better

Env't, 523 U.S. 83, 101 (1998).

"The doctrine of standing . . . requires federal courts to satisfy

themselves that 'the plaintiff has 'alleged such a personal stake in the outcome of

the controversy' as to warrant his invocation of federal-court jurisdiction.'"

Summers v. Earth Island Inst., — U.S. —, 129 S. Ct. 1142, 1149 (2009) (citation

omitted).  Although an injury may be minimal, the plaintiff must show that he or

11

she suffered a "concrete and particularized" injury that is "actual or imminent" and not "conjectural" or "hypothetical." Lujan, 504 U.S. at 560; Council of Ins. Agents & Brokers v. Molasky-Arman, 522 F.3d 925, 932 (9th Cir. 2008).

Plaintiffs bear the burden of establishing standing for each type of relief sought. Summers, 129 S. Ct. at 1148. Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

A prudential requirement of the standing doctrine requires that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499. Prudential standing further requires that a court consider "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim falls within the zone of interests to be protected or regulated by the constitutional guarantee or question." Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848-49 (9th Cir. 2007).

Federal Rule of Civil Procedure 17(a) requires that "[a]n action must be prosecuted in the name of the real party in interest." In the instant case,

U.S. Bankruptcy Court - Hawaii  #10-00771   Dkt # 31   Filed  06/16/10   Page 19 of 26

Plaintiffs Moore and Herschelman are not parties or beneficiaries of the Loan Documents. ("RJN," Doc. # 112, Exs. A & B.)  Because Decedent was the sole borrower under the Note and Mortgage, (RJN, Exs. A & B), only the Decedent or someone properly representing her Estate may assert the claims pled in the FAC. All FAC claims as to the Condominium arise out of actions concerning the Estate and not Plaintiffs individually. (See FAC.)

A personal representative of a decedent has standing to sue on behalf of a decedent as provided by Hawaii Revised Statutes ("HRS") § 560:3-703:

> Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this State at the decedent's death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as the decedent had immediately prior to death.

Id.(c); see also HRS § 560:3-711(a); HRS § 560:3-711 ("Until termination of appointment a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court."); HRS § 560:3-709 ("The personal representative may maintain an action to recover possession of property or to determine the title thereto."); HRS § 560:3-715(21) (providing personal representative with the power to employ attorneys), (27) (providing personal

13

representative with power to satisfy and settle claims and distribute the estate).  A personal representative does not need to have a court order of appointment.  HRS § 560:3-704.

An attorney must represent a personal representative before the court where an estate has multiple beneficiaries and creditors.  See Simon v. Harford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008) (". . . courts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity."); Pridgen v. Andresen, 113 F.3d 391, 393 (2nd Cir. 1997); Warth, 422 U.S. at 499 (a claimant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (quotation omitted); see also C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697-98 (9th Cir. 1987) (trustee attempting to represent a trust pro se was not, pursuant to 28 U.S.C. § 1654, a "party" conducting his "own case personally" as he was not the beneficial owner of the claims being asserted); Iannoccone v. Law, 142 F.3d 553, 559 (2nd Cir. 1998) (administrator of estate may not appear pro se on behalf of estate).  Hawai`i law also precludes Plaintiffs from representing the Estate pro se in a lawsuit in their individual capacity or in Moore's capacity as a personal representative.  Tradewinds Hotel, Inc., 799 P.2d at 65-66 (holding that a trustee representing trust pro se was not the real party in interest and

14

the burden was on the trustee to show that he was the sole beneficiary of the trust); see also Oahu Plumbing and Sheet Metal, Ltd. v. Kona Const., Inc., 590 P.2d 570, 572-576 (Haw. 1979)(finding that HRS §§ 605-2, 605-14, which permit natural persons to appear pro se in court, do not permit natural persons to act as attorneys and represent a corporation or other natural persons in their causes); In re Ellis, 487 P.2d 286 (Haw. 1971) (trustee of creditors and stockholders of a corporation cannot appear pro se in court because trustee would be representing the interests of others and, therefore, would be engaged in the unauthorized practice of law).

Here, PNC Bank defendants are creditors of the estate by virtue of the Note and Mortgage.[3]  (FAC ¶¶ 2, 5-7, 9.)  Accordingly, even if Moore was properly appointed as representative of the estate, a fact which is contested by the PNC Defendants (Reply at 8-10), and even if she was to amend her Complaint to sue in that capacity, she may not maintain this action because the existence of multiple beneficiaries and creditors of the Estate, including Plaintiff Herschelman, requires any action to be undertaken by an attorney.

In sum, because all the claims in the FAC as to the Condominium are those of the Decedent's Estate, these claims must be brought by the Estate's

_____

[3] Although the Court does not rely on it, the Court also notes that Wells Fargo Bank appears to have a second mortgage on the property.  (See Doc. # 248, Ex. C.)

15

personal representative, not in an individual capacity by an alleged heir.  Further, Hawai`i law precludes Plaintiffs from representing the Estate in a lawsuit in their individual capacity or in Moore's capacity as a personal representative of the Estate.

For all the reasons above, Plaintiffs' alleged injury of "distress of their emotions and . . . the injury of their property by loss of their time, labor and money and by the impending loss of the Windsor Condominium Property[,]" are not enough to grant them standing.  (See Opp'n at 8.)  If Plaintiff Moore wishes to pursue claims on behalf of the Estate as its personal representative, an attorney must file a complaint as to those claims.  Accordingly, the Court finds that Plaintiffs lack standing and GRANTS PNC Bank defendants' Motion to Dismiss as to standing and dismisses Plaintiffs' claims as to the Condominium without prejudice.

As to the claims for the House, which were not brought before the Court in the instant Motion but as to which the Court sua sponte chooses to address standing, Plaintiff Moore has no individual interest in the House beyond any potential allegations of standing because of her status as an individual heir or as a pro se personal representative of the Estate. (See FAC.)  Therefore, for the reasons stated above, the Court finds that Plaintiff Moore has no standing to pursue any

claims with regards to the House. It is unclear to the Court if Plaintiff Herschelman has standing to sue with regards to these claims. The FAC states that Plaintiff Herschelman was owner of the House or co-owner with Decedent. (See FAC.) Therefore, the Court directs Herschelman to file a Second Amended Complaint addressing standing as described below. For all the reasons above, Plaintiff Herschelman must now prosecute this action. Moore, as a non-attorney, may not represent Herschelman or act on his behalf.

## CONCLUSION

For the reasons set forth above, the Court finds that both Plaintiff Moore and Plaintiff Herschelman lack standing as to claims brought regarding the Condominium. Accordingly, the Court **GRANTS** PNC Bank defendants' Motion to Dismiss as to lack of standing and dismisses Plaintiffs' claims as to the Condominium without prejudice. (Doc. # 109.) Defendant AOAO the Windsors Joinder is DENIED AS MOOT. (Doc. # 166.) The Court **GRANTS** all other joinders as the Court's instant Order below bears directly on all defendants. (Docs. ## 121, 129, 131, & 135.) The Court **GRANTS IN PART AND DENIES IN PART** PNC Bank defendants' Request for Judicial Notice (Doc. # 112), **DENIES** PNC Bank defendants' additional requests for judicial notice (Docs. ## 111 & 218), and **DENIES** Plaintiffs' motions to strike such requests (Docs. # 249 & 256).

17

The Court **DENIES** PNC Bank defendants' motion for sanctions and **DENIES AS MOOT** PNC Bank defendants' motion to strike. (Doc. # 279.)

Plaintiff Herschelman is directed to file a Second Amended Complaint no later than June 25, 2010. The Second Amended Complaint should only include those claims and defendants with regard to the House (2016 Komo Mai Drive, Pearl City, Hawaii) and should exclude all claims and defendants with regard to the Condominium. Plaintiff Herschelman is directed to state specifically the grounds upon which he has standing to assert claims regarding the House in the Second Amended Complaint, if one is filed. The Court emphasizes that this Order in no way grants Plaintiff leave to add claims or allegations to those articulated in the FAC. Rather, the Second Amended Complaint shall only constitute a formal representation of the allegations and claims that remain. Failure to comply with this Order may result in dismissal of this action.

Accordingly, because this Court has directed Plaintiff Herschelman to file a Second Amended Complaint, the Court **DISMISSES AS MOOT** without

U.S. Bankruptcy Court - Hawaii  #10-00771   Dkt # 31   Filed  06/16/10   Page 25 of 26

prejudice all pending motions as to the First Amended Complaint not otherwise

addressed by this Order.  (Docs. ## 107, 130, 136, 140, 160, 165.)

       IT IS SO ORDERED.

       DATED:  Honolulu, Hawaii, May 24, 2010.



_____
David Alan Ezra
United States District Judge

Moore et al. v. National City Mortgage Company, et al., Cv No. 09-00461 DAE-
KSC;  ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS AS
TO STANDING AND DISMISSING PLAINTIFFS' CLAIMS WITHOUT
PREJUDICE; (2) GRANTING, DENYING, AND DISMISSING
VARIOUS MOTIONS AND JOINDERS